UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| STANLEY W. JOHNSON, ) | CASE NO.  1:08 CV2244 |
| ) | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| v. ) | MEMORANDUM OF OPINION |
| ) | AND ORDER |
| PAUL W.  SPRINGER, *dba*, SPRINGCO ) | |
| METAL COATING, ) | |
| ) | |
| Defendant. ) | |

Plaintiff *pro se* Stanley W.  Johnson filed this *in forma pauperis* civil rights action against his former employer, Paul W.  Springer d/b/a Springco Metal Coating.  He asserts this court's jurisdiction pursuant to the "American [sic] with Disability Act, 42 U.S.C.A. § 2000e-5- e.g.: 42 U.S.C. § 1983 - Civil Rights; 42 U.S.C. § 2000e - Title VII - Discrimination."  (Compl. at 1.) He seeks reinstatement to the same or similar position he held, a pay raise, and compensatory and punitive damages.

*Background*

Mr. Johnson was hired as a maintenance technician at defendant's Metal Plating Plant on August 21, 2006.  After 90 days employment, he requested a raise that a former supervisor allegedly promised to him when he was hired. The Human Resources Manager ignored his request

without explanation.  He adds that he "<u>refused</u> to perform hazardous work protected under Occupational Health and Safety Administration (OSHA) - by offering to perform such duties through wage compensation." (Compl. at 3)(emphasis in original.)  The defendant apparently did not agree to this arrangement and, instead, demoted Mr. Johnson to Maintenance Helper.  His immediate supervisor, Rich Waugaman, advised plaintiff to report directly to him for any repairs or design changes to the equipment.  For reasons not explained in the complaint, the Human Resource Manager asked Mr. Johnson to "provide specifics for her as to what his job description would be for myself." (Compl. at 3.)

On December 24, 2007, Mr. Johnson suffered a "[l]aceration of the scrotum . . . in the course and scope of my employment." (Compl. at 3.)  As a result of this injury, he was placed on limited work duty by his physician.  Upon his return to the plant, Mr. Johnson worked under certain restrictions, but was "forced to leave work early when the wound was re-injured while performing assigned duties." (Compl. at 3.)  During a telephone conversation with the defendant on January 8, 2008, Mr. Johnson and the defendant "engaged in a debate . . . as to the doctor [sic] explicit instructions as to what light-work constituted." (Compl. at 3.)  While the defendant attempted to find other work for Mr. Johnson, he believed that it "did not fall within doctors [sic] limited work restrictions, Therefore Plaintiff choose [sic] not to return to work at that time, which Plaintiff has that right under the Bureau of Workmen's Compensation guidelines." (Compl. at 3.)

On January 11, 2008, Mr. Johnson received a certified letter from defendant advising him that his employment was terminated.  He believes that the new assignment offered by the defendant violated his physician's instructions "as to the type of work, atmosphere [sic] environment

and distance of movement." (Compl. at 4.) After he was "released" by his physician, Mr. Johnson attempted to return to Springco to be reinstated to full duty. The defendant, however, denied his request.

In his current complaint, Mr. Johnson alleges that he was discriminated against because he is missing three fingers on his right hand. On an undisclosed date, he filed a charge of discrimination with the Equal Employment Opportunity Commission (E.E.O.C.)[1] He claims he filed his complaint with this court within 90 days of receiving the E.E.O.C.'s Notice of Right to Sue.

*Standard of Review*

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).

*Americans with Disability Act*

*a. Purpose*

"A person seeking relief under the ADA for termination must establish (1) that he

---

[1] As no copy of the E.E.O.C.'s letter or charge is attached to the complaint, it is presumed he charged the defendant with ADA discrimination.

[2] A claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

is a disabled person within the meaning of the Act, (2) that he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) that he suffered an adverse employment decision because of his disability." *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997) (citation omitted).  The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more of the major life activities of [the affected] individual." 42 U.S.C. § 12102(2)(A).   Mr. Johnson states that he is perceived as disabled by his employer because he is missing three fingers.  He adds that he is "otherwise qualified" to perform the essential functions of his job as a Maintenance Technician.

Accepting these facts as true, Mr. Johnson's complaint fails to state that his alleged disability (i.e., missing fingers) had anything to do with his termination. The Sixth Circuit aptly explained the theory underlying the ADA requirement that employers make reasonable accommodations as follows:

> A person whose condition is entirely controlled will not need any additional accommodation under the Act: there is no problem to accommodate. Such a person could bring suit only if the employer discriminated against her in a more direct way. For example, a hearing-impaired sales representative could invoke the Act's protections if his employer fired him for wearing the aid in spite of a strict company dress code or, believing that a salesman with a hearing aid would project a poor image, refused to allow him to wear the device on the job. In such a case, the employee would be able to request a reasonable accommodation that would allow him to use the medical device-a waiver of the strict dress code, for example, assuming that was reasonable, or a special hearing-aid-compatible telephone. *See* H.R. Rep. No. 101-485(II), at 64 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 346 ("For persons with hearing impairments, reasonable accommodations may include . . . telephones compatible with hearing aids...."). Similarly, a person with a pacemaker is disabled under the Act: although he might be fully functional, he could certainly request a reasonable accommodation of being moved to a desk farther away from a microwave oven that could disrupt the medical device. That a person with a disability is

> able to use medical knowledge or technology to overcome the effects of his condition . . . may mean that he will, in practice, rarely require any sort of accommodation; but, his achievement should not leave him subject to discrimination based on his underlying disability.

*Gilday v. Mecosta County*, 124 F.3d 760, 764 (6th Cir. 1997). The court further noted the fact that "such a person could request accommodation means that he is actually physically disabled under the Act, and not merely considered to be disabled or have a record of disability. *Compare* 42 U.S.C. § 12102(2)(A), with *id*. § 12102(2)(B), (C). A person without an actual disability would not need any accommodation." *Id*., at n.4. It based on this theory that the courts begin to determine whether a disability qualifies as one which "substantially limits a major life activity," and thus entitles an employee to a reasonable accommodation from his employer.

*b. Failure to Accommodate*

Mr. Johnson alleges that his employer failed to provide an acceptable accommodation for his on-the-job injury. In response, he exercised his perceived "right" to refuse to return to work until his employer's accommodation met his needs. This does not, as a matter of law, assert an ADA failure-to-accommodate claim.

The ADA does not impose upon an employer the duty to accommodate a qualified "disabled" employee when the employee is statutorily disabled[3] within the meaning of 42 U.S.C.

---

[3]According to the statute:

> The term "disability" means, with respect to an individual--
>
> > **(A)** a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> >
> > **(B)** a record of such an impairment; or

(continued...)

§ 12102(2)(B) (record of impairment) or 42 U.S.C. § 12102(2)(C) (regarded as disabled). *See Weber v. Strippit*, Inc., 186 F.3d 907, 917 (8th Cir.1999)(holding that "'regarded as' disabled plaintiffs are not entitled to reasonable accommodations"); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 n. 2 (3d Cir.1999) (commenting that extending a duty to accommodate to "record of" claims is plagued by the same concerns as allowing a duty to accommodate claim to a "regarded as" plaintiff, but expressly not deciding the issue); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 n. 6 (7th Cir.1998) (strongly suggesting that employer does not incur a duty to accommodate an employee based on a history of a substantially limiting impairment when current limitations are not substantial). Thus, no cause of action lies for an employer's failure to accommodate a disabled

---

[3](...continued)

        **(C)** being regarded as having such an impairment.

42 U.S.C. § 12102(2)(1990). Shortly after Mr. Johnson's complaint was filed, this section was amended. *See* Pub. L. 110-325, §§ 4(a), 8, Sept. 25, 2008, 122 Stat. 3555, 3559, provided that effective January 1, 2009, this section is amended to read:

    § 12102. Definition of disability

    As used in this chapter:

    **(1) Disability**

    The term "disability" means, with respect to an individual--

        **(A)** a physical or mental impairment that substantially limits one or more major life activities of such individual;

        **(B)** a record of such an impairment; or

        **(C)** being regarded as having such an impairment (as described in paragraph (3)).

employee unless that employee alleges he is actually disabled within the meaning of 42 U.S.C. § 12102(2)(A).

Mr. Johnson does not allege that his work injury qualifies as any disability, let alone a § 12102(2)(A) disability. Instead, he focuses on Springco's decision to fire him after he refused an accommodation for his on-the-job injury. Even accepting, for the sake of argument, that Mr. Johnson's missing fingers qualify as a disability, he must still allege he suffered an adverse employment action due to his disability. *See McKay.,* 110 F.3d at 371 (6th Cir.1997). There is no causal connection, however, between Mr. Johnson's alleged disability and his employer's decision to fire him. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir.2004) (adverse employment action is a "materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct.")(citation omitted).

The complaint begins with plaintiff's admission that he volunteered to engage in OSHA prohibited activities in exchange for a wage increase. The defendant rejected this proposal and instead demoted him. Some time thereafter he suffered an injury at work. As a result of this injury, he left the plant, was treated by a physician and returned to work some time thereafter. His injury recurred. At that point, he chose to leave the plant and debate with his employer regarding a new work assignment. Refusing to return to work to accept the new assignment, Mr. Johnson was fired. While he claims Workers Compensation guidelines entitle him to refuse to return to work under the circumstance, this is not a Workers Compensation action.

Mr. Johnson's alleged disability and his job injury are two separate issues. He makes no attempt to link the two and it is not the role of the court to fashion a connection. Moreover, there is no allegation that his injury qualified as a disability. Without an allegation that he was fired

because of his disability, the court cannot begin to address his claim for relief under the ADA.

There are no facts set forth in the complaint which address Mr. Johnson's reference to "42 U.S.C. § 1983 - Civil Rights; 42 U.S.C. § 2000e - Title VII - Discrimination," beyond his jurisdictional statement. Therefore, the court deems these civil rights claims as conclusory. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)(legal conclusions alone are not sufficient to present a valid claim).

Accordingly, plaintiff's Motion to Proceed *in forma pauperis* is granted. This action is **dismissed** on the merits, but without prejudice as to any state law claims plaintiff may have under the facts alleged. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

/s/ Patricia A.Gaughan
PATRICIA A. GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 12/12/08

---

[4] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.